UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE MATZKIN, ESQ., : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No.: 3:24-cv-01067-OAW |
| vs. : | |
| : | Date: February 9, 2026 |
| ANDRE CAYO, ESQ., : | |
| : | |
| Defendant. : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Summary Judgment standard**

In ruling on summary judgment, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs 'if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 72 (2d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (alteration in original). "No genuine dispute of material fact exists when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (quoting *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001)). The burden is on the moving party to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). "Once the moving party demonstrates that there are no genuine issues of material fact, the nonmoving party 'must come forth with evidence sufficient to allow a reasonable jury to 4 find

1

in [its] favor.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35–36 (2d Cir. 2008) (quoting *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001)) (alteration in original). A court must "view the evidence in the light most favorable to the party opposing summary judgment, draw all reasonable inferences in favor of that party, and eschew credibility assessments." *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 541 (2d Cir. 2019) (internal citation and quotation marks omitted).

"Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor. Thus, the non-moving party may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

When a motion for summary judgment is supported by sworn affidavits or other documentary evidence permitted by Rule 56, the nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading." Fed. R. Civ. P. 56(e); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Rather, "the [nonmoving] party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment. *Id.* "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). Similarly, a party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible. *Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993).

With respect to Cayo's counterclaims, an absence of evidence to support them warrant summary judgment for Matzkin.  A moving party may satisfy the summary judgment burden "by showing–that is pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted); *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

A. **Plaintiff Matzkin is entitled to summary judgment on Count One for Breach of Contract.**

There is no genuine issue of material fact that Matzkin and Cayo had a contract for a 50-50 split of any contingency fee from the Zilaro lawsuit, and that Cayo breached this contract.

The existence of a contract is established by the communications between Matzkin and Cayo leading to Matzkin's agreement to serve as co-counsel in the Zilaro lawsuit.  *See* Local Rule 56(a)(1) Statement of Undisputed Material Facts,[1] ¶ 1 (Cayo solicited Matzkin to "get involved" in the Zilaro lawsuit), ¶ 2 (Cayo knew Matzkin lived overseas in Armenia), ¶ 4 (Matzkin later inquired about the matter and Cayo asked Matzkin, "You want to help with the case?"), ¶ 9 (establishing the terms of Matzkin's and Cayo's agreement as a 50-50 contingency fee split, that Matzkin would prepare and file an amended complaint adding a claim for malicious prosecution,[2] and that Matzkin would handle pretrial litigation but not attend trial as

---

[1] Citations are to paragraphs of the Local Rule 56(a)(1) Statement, which incorporates exhibits cited therein.

[2] Cayo believed that a claim for malicious prosecution was not cognizable against a non-police individual and also believed such claim was time-barred because he was unaware of C.G.S. 52-577f, which made clear it was not time-barred.  *See* Local Rule 56(a)(1) Statement, ¶¶ 3, 5.  He had not included such claim when he filed the lawsuit in 2018. *Id.*, ¶ 8.  Matzkin decided to join the case because he believed Zilaro had a strong claim for malicious prosecution including punitive damages and that Cayo would lose on his own. *Id.*, ¶¶ 6, 7.

3

he lived overseas).  Matzkin filed his appearance in reliance on the agreement, ¶ 10.  The 50-50 split was reconfirmed by Cayo in writing.  ¶ 11.

There is no genuine issue of fact that Matzkin fulfilled his contract with Cayo, notwithstanding any assertion by Cayo that Matzkin did not fulfill it because he did not attend the Zilaro trial with Cayo.  It was regularly confirmed between them that Matzkin would not be attending trial, and Cayo reconfirmed in writing on June 10, 2022, that he would handle trial on his own.  *See* Local Rule 56(a)(1) Statement of Undisputed Material Facts, ¶¶ 13, 16, 17.  There was never any alteration of this understanding from the time Matzkin first agreed to enter the case.  *Id.*, ¶ 18.  From the time of his appearance Matzkin handled the pretrial litigation as agreed, and before and during trial Matzkin served as a fully involved, active remote co-counsel, providing assistance including drafting motions and responses to motions, going over witness testimony, preparing evidence, and spending hours on phone calls late into the nights to strategize and help Cayo prepare for the following day. *Id.*, ¶ 19.

Finally, there is no dispute that Cayo failed to pay Matzkin any part of the contingency fee he collected from the Zilaro judgment proceeds.  *See* Local Rule 56(a)(1) Statement of Undisputed Material Facts, ¶ 33.[3]

Based on these simple and straightforward undisputed material facts – there was a contract, Matzkin fully performed, and Cayo failed to pay him – Matzkin is entitled to summary judgment on Count One, in the amount of $18,354. *See* Local Rule 56(a)(1) Statement of Undisputed Material Facts, ¶¶ 32-33.

---

[3] There was a verdict for Zilaro for over $154,000 including over $93,000 for malicious prosecution, which was reduced following post-trial motions to $101,125.  *See* Local Rule 56(a)(1) Statement, ¶¶ 20-21.  For some unknown reason, Cayo failed to request a punitive damages instruction. *Id.*, ¶ 22.

**B. Plaintiff Matzkin is entitled to summary judgment on Count Two, Statutory Theft (C.G.S. § 52-564).**

Connecticut General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

"In order to prevail on a claim for common-law conversion or a claim for statutory (§ 52-564) theft, the plaintiff must show, inter alia, that the property that the defendant allegedly converted or stole belonged to the plaintiff." *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408 (Conn. 2007).

Courts interpret statutory theft under § 52-564 as equivalent to larceny under Conn. Gen. Stat. § 53a-119. *Blackwell v. Mahmood*, 120 Conn. App. 690 (2010). A person commits larceny under § 53a-119 when they wrongfully take, obtain, or withhold another's property with the intent to permanently deprive the owner or appropriate it for themselves or a third party. *Fernwood Realty, LLC v. AeroCision, LLC*, 166 Conn. App. 345 (2016).

To prevail in a civil theft claim under Conn. Gen. Stat. § 52-564, the plaintiff must establish the following elements:

1. Ownership or Lawful Possession – The plaintiff must demonstrate that they owned or had a legal right to possess the property at issue.
2. Wrongful and Intentional Taking or Retention – The defendant must have intentionally and wrongfully taken the plaintiff's property or knowingly received and retained stolen property. Mere negligence or mistake is insufficient—the defendant's actions must be deliberate.
3. Value of the Stolen Property – The plaintiff must prove actual damages, including the value of the stolen property, which serves as the basis for calculating treble damages.

Although, as noted by the Appellate Court, "direct evidence of intent is rarely available," *State v. Kimber*, 48 Conn. App. 234, 240, cert. denied, 245 Conn. 902 (1998), in this case the evidence of Cayo's intent *is* available, in the form of Cayo's own written extortion attempt to get Matzkin to give up his fee. *See* Local Rule 56(a)(1) Statement of Undisputed Material Facts, ¶¶ 25-29.

First, Cayo removed Matzkin's appearance to prevent him from concluding a negotiated settlement that would have paid $115,000 instead of the judgment amount of $101,125. *Id.*, ¶¶ 24-25. Then, Cayo declined Matzkin's offer to reduce his share of the fee to 40% and threatened to file a grievance against Matzkin for supposedly "taken [sic] control of a case that's not yours." *Id.*, ¶ 26. Then, when Matzkin agreed to let Cayo handle it and asked only for his confirmation of the apportionment including Matzkin's amount, Cayo responded, "Fuck you Bruce." *Id.*, ¶ 27. He then threatened to withdraw his own appearance leaving Zilaro with no counsel. *Id.*, ¶ 28. He wrote an extortionate email to Matzkin attempting to get Matzkin to reduce his share of the fee to 10%. *Id.*, ¶ 29. He failed to file an appeal, and the $115,000 settlement was lost. *Id.*, ¶ 30. Finally, he threatened a grievance against Matzkin for notifying defense counsel of his claim and lien for one-sixth of the judgment proceeds. *Id.*, ¶ 31.

Cayo eventually received the judgment proceeds that were paid into court and never paid Matzkin anything. *Id.*, ¶¶ 32-33. His actions and extortionate emails established, without any issue of material fact, that his intent was to obtain for himself, and deprive Matzkin of, the money Cayo knew Matzkin was entitled to from the Zilaro contingency fee. He procured the full judgment proceeds, and he intentionally deprived Matzkin of his share.

Based on these undisputed material facts – Matzkin's entitlement to his fee, Cayo's attempts to extort Matzkin, Cayo's removal of Matzkin's appearance to prevent Matzkin from

6

handling the judgment proceeds, Cayo's procurement of the judgment proceeds and his refusal to pay Matzkin – there is no genuine issue of material fact that Cayo committed civil theft and that Matzkin is entitled to summary judgment on Count Two in the amount of $18,354, trebled to $55,062 plus attorney fees.

### C. **Plaintiff Matzkin is entitled to summary judgment on Count Three, Breach of the Covenant of Good Faith and Fair Dealing.**

"[E]very contract carries an implied duty requiring that neither party do anything that will injure the other to receive the benefits of the agreement." (Internal quotation marks omitted.) *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432, 849 A.2d 382 (2004); *Ramirez v. Health Net of the Northeast, Inc.*, 285 Conn. 16, n.18, 938 A.2d 576 (2008). "To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiffs' right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. Bad faith, in general, implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." (Citation omitted; internal quotation marks omitted.) *Keller v. Beckenstein*, 117 Conn. App. 550, 563–64, 979 A.2d 1055, cert. denied, 294 Conn. 913, 983 A.2d 274 (2009). "The definition [of good faith] requires not only honesty in fact but also 'observance of reasonable expectations of the contracting parties as they presumably intended.'" *Verrastro v. Middlesex Ins. Co.*, 207 Conn. 179, 190, 540 A.2d 693 (1988).

An action for breach of the covenant of good faith and fair dealing requires proof of three essential elements: (1) that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; (2) that the defendant engaged in

conduct that injured the plaintiff's right to receive benefits it reasonably expected to receive under the contract; and (3) that when committing the acts by which it injured the plaintiff's right to receive under the contract, the defendant was acting in bad faith. *Le v. Saporoso*, 2009 WL 4069531 (Conn. Super. Ct. 2009).

As established above with respect to Count One, there is no disputed issue of fact that Matzkin and Cayo had a contract under which Matzkin expected to be paid. As established above with respect to Count Two, Cayo injured Matzkin's right to receive the 50% of the Zilaro contingency fee he reasonably expected to receive. The only remaining issue needing to be addressed here is Cayo's bad faith. As noted above, although "direct evidence of intent is rarely available," *State v. Kimber*, 48 Conn. App. 234, 240, cert. denied, 245 Conn. 902 (1998), in this case the evidence of Cayo's intent is his own written extortion attempt to get Matzkin to give up his fee. *See* Local Rule 56(a)(1) Statement of Undisputed Material Facts, ¶¶ 25-29. There is no material issue of fact that Cayo wrote to Matzkin attempting to extort Matzkin's concession on his entitlement to 50% of the Zilaro contingency fee. This establishes Cayo's bad faith as a matter of law.

The federal summary judgment standard mirrors the standard for a directed verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Although one is made before trial and the other during trial, the Supreme Court concluded that "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id. See also Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the

8

record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

In an effort to overcome summary judgment Cayo may assert that there was no contract, or that Matzkin agreed to be at trial then changed his mind. Those assertions, should Cayo make them, are blatantly contradicted by the evidence presented in support of this motion. The evidence does not "present a sufficient disagreement to require submission to a jury" because the evidence "is so one-sided that one party must prevail as a matter of law." Matzkin would be entitled to a directed verdict on the issue of Cayo's bad faith. Therefore, Matzkin is entitled to summary judgment.

### D. **Matzkin is entitled to summary judgment on Cayo's counterclaims.**

Cayo's counterclaims are not a model of clarity. Counts One, Two, and Three are clumped together, with Cayo unembarrassedly, and without further explanation, inserting the following language under the joint heading for the three claims: "As counsel does not have sufficient time to plead the claims into separate counts." *See* Answer, Special Defense and Counterclaim, p. 6.

The three claims are encapsulated in paragraph 22: "CAYO only agreed to share with MATZKIN as he did because he believed MATZKIN would assist 50/50 with the jury selection and trial if the case did not settle and MAZTKIN [sic] only cared about a settlement."

Most notably, Cayo admits to the 50-50 agreement to share the Zilaro fee. *See* Cayo's counterclaims, ¶ 19 (acknowledging the 50-50 fee split agreement in asserting that he would not have agreed if knew Matzkin used marijuana). [4] The only disputed issue is whether he did so

---

[4] Matzkin notes, but does not dignify, Cayo's irrelevant inclusion of allegations concerning Matzkin's use of marijuana, which seem intended by Cayo to prejudice the Court's view of Matzkin to the extent such would impact the Court's decision on the present motion.

9

"because he believed MATZKIN would assist 50/50 with the jury selection and trial if the case did not settle." This is precisely what the Supreme Court had in mind when it wrote, in *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."

Cayo first solicited Matzkin for the case in 2018, Matzkin joined as co-counsel in March of 2019, and Cayo confirmed in writing on January 9, 2020, that the agreement was for a 50-50 split of the fee. *See* Local Rule 56(a)(1) Statement, ¶ 11. At all these points in time Matzkin lived in Armenia as was known to Cayo (*see* Local Rule 56(a)(1) Statement, ¶ 2), and there was no expectation that Matzkin would not be living in Armenia at the time of the Zilaro trial. Matzkin relocated to Massachusetts in July of 2021 (*see* Local Rule 56(a)(1) Statement, ¶ 12), and it was only due to Covid that the Zilaro trial had not yet occurred. From there Matzkin continued to handle the pretrial litigation pursuant to his agreement with Cayo, and reconfirmed numerous times he would not be able to attend trial. *Id.*, ¶ 13. There is no evidence Matzkin ever agreed to attend trial either before or after he relocated from Armenia to Massachusetts. Cayo's assertion is completely contradicted by the evidence, such that he could not survive a directed verdict.

In the spring of 2022 Matzkin found an expert psychologist and it was agreed Cayo would handle the expert discovery. *See* Local Rule 56(a)(1) Statement, ¶ 14. In June of 2022 Cayo was suspended for one month, resulting in Matzkin having to handle the expert discovery that had been Cayo's agreed responsibility. *Id.*, ¶ 15. This led to Matzkin expressing his

annoyance at Cayo on the phone, and Cayo confirming in writing that Cayo would handle the trial without Matzkin being there live, exactly as had been agreed form the start. *Id.*, ¶¶ 16-17.

As for "assisting" with jury selection and trial, Matzkin undisputedly did so, remotely as was always their agreement. *See* Local Rule 56(a)(1) Statement, ¶ 19. There was never any alteration of the agreement between Matzkin and Cayo; Cayo's claim is a *post hoc* contrivance to further obstruct Matzkin's recovery of, and keep for himself, Matzkin's rightful fee from the Zilaro judgment proceeds.

Cayo's fourth counterclaim, for negligent infliction of emotional distress, lacks any factual underpinning and consists only of an assertion of a general "duty to not cause emotional distress to CAYO;" an allegation that Matzkin "breached that duty when he sent many emails to others, to cayo [sic], to delay his payment from the case, [sic] defame the character of Cayo" (without a single such email specified); that he incurred money damages (with no further explanation); and that "MATZKIN was a substantial factor in causing CAYO's anguish and emotional distress."

This claim would have been susceptible to a 12(b)(6) motion for failure to state a claim, however at this stage, the Court may apply the summary judgment standard to determine the baselessness of the claim and dismiss it under Rule 56. That this claim is utterly baseless and likely crosses the line of frivolous, is clear from the lack of substantive factual underpinning and from the Affidavit of Bruce Matzkin and exhibits thereto.

It is particularly audacious for Cayo to allege that Matzkin caused him to incur damages when Cayo was going to omit from the Zilaro lawsuit any claim for malicious prosecution due to his ignorance of the law. *See* Local Rule 56(a)(1) Statement, ¶¶ 3, 5, 8. It was Matzkin's

insistence to add the malicious prosecution claim which accounted for the bulk of Zilaro's damages award – over $93,000 – from the jury.  *See id.*, ¶¶ 9, 10, 20.

## Conclusion

For all the foregoing reasons, Matzkin is entitled to judgment as a matter of law on Counts One, Two and Three of his Complaint, and on all Cayo's counterclaims, and respectfully requests the Court to enter summary judgment on those claims and counterclaims.

## CERTIFICATE OF SERVICE

I certify that I have served the foregoing via electronic mail to the following on February 9, 2026:

Andre Cayo, Esq.
84 W. Park Place, 3rd Floor
Stamford, CT 06901
cayolaw@gmail.com

  **/s/  Donato J. Rinaldi, Esq.**
Donato J. Rinaldi, Esquire
Bar Number CT31631
e-service@rinaldilawpa.com
RINALDI LAW, P.A.
9310 Old Kings Road South
Suite 302
Jacksonville, FL 32257
(904) 328-6134
Counsel for Bruce Matzkin